## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

ANTHONY PEPICELLI
4804 Fox Street
College Park, MD 20740,

and

AMBERLYN JOHNSTON
149 Thayer Street, Apt. 2
Jamestown, NY 14701

*individually and on behalf of all others
similarly situated,*

                Plaintiffs,

    v.

FEDEX CORPORATE SERVICES, INC.,
942 South Shady Grove Road
Memphis, TN 38120,

           Defendant.

Case No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs, Anthony Pepicelli and Amberlyn Johnston, individually and on behalf of all

other persons similarly situated, by their attorneys, for their Complaint against Defendant, FedEx

Corporate Services, Inc. ("FedEx") allege the following:

## NATURE OF THE ACTION

1.    In an effort to promote FedEx's domestic and international package delivery

services, FedEx violated federal law by sending unauthorized and unsolicited automated text

messages to the cellphones of consumers throughout the nation without their consent.

2.    By initiating these unauthorized texts, FedEx has violated the called parties'

statutory rights and has caused the call recipients actual harm, not only because the called parties

were subjected to the aggravation and invasion of privacy that necessarily accompanies unsolicited text messages, but also because the recipients, like Plaintiffs, must frequently pay for the text messages they receive or incur a usage allocation deduction from their phone plans, notwithstanding that the texts were sent in violation of specific legislation on the subject.

3.     In order to redress these injuries, Plaintiffs, on behalf of themselves and the proposed Classes alleged herein, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which protects the privacy right of consumers to be free from receiving unsolicited automated text messages.

4.     On behalf of the proposed Classes, Plaintiffs seek an injunction requiring Defendant to cease all unauthorized automated texting activity and an award of actual and statutory damages to the members of the Classes, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq.*

6.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a nationwide class, which will result in at least one class member belonging to a different state than Defendant. Plaintiffs seek up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

7.     Venue is proper in this District because a substantial portion of the events

complained of occurred here.   In particular, Defendant sent and/or initiated unauthorized text messages to one of the Plaintiffs who lives in this District.

## PARTIES

8.     Plaintiff, Anthony Pepicelli, is a citizen of the State of Maryland residing in the City of College Park, Prince George's County.

9.     Plaintiff, Amberlyn Johnston, is a citizen of the State of New York.

10.     Defendant FedEx is a Delaware corporation with its principal place of business located in Memphis, Tennessee.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.     Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice—
>
> *        *        *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

13.     Thus, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of ATDSs or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

14.     The term "call" has been interpreted to include both voice and text calls.   Thus,

"call" within the meaning of the TCPA includes text messages placed to consumers' cellular phones. *See, e.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA and whose regulations are generally binding, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls (including text messages) are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

17.     This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553, at *8 (9th Cir. Sept. 20, 2018) (emphasis supplied).[1]

---

[1] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

18.     Predictive dialers fall within the scope of the term 'automatic telephone dialing system.' *See Marks*, 2018 WL 4495553, at *8 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.").[2]

19.     Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA.   *See, e.g., Marks*, 2018 WL 4495553 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.*") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

20.     The FCC has also issued a Declaratory Ruling confirming that autodialed calls (including text messages) and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

21.     Under the TCPA, the burden is on the sender – here, FedEx – to obtain,

---

[2] Previously, the FCC has explained that while previous autodialers generated random numbers to call, "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003). So a predictive dialer, which "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," *id.* at 14091, "constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," 23 F.C.C. Rcd. at 566. In other words, an autodialer "has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) ("2012 FCC Ruling").

document, and prove prior express consent.

## FACTUAL ALLEGATIONS

22.    FedEx, a worldwide shipper of packages, ordinarily provides its shipping services to consumers on a fee-for-shipment basis, whereby consumers agree to pay a set fee upon placement of an order for a package to be shipped to a given destination.

23.    As an ordinary business practice, FedEx collects the cellphone numbers of its customers when a customer account is opened and/or when an order is placed.  FedEx and/or its agents then use the customers' cell phone numbers to send them text messages in order to notify them about the status of their package deliveries.

24.    In an effort to cut costs associated with the automated texting services, FedEx and/or its agents fail to employ the procedures and safeguards necessary to ensure that the telephone numbers to which Defendant sends its automated texts actually belong to the customers to whom the texts are intended, and to honor requests to stop sending such texts to cellphone numbers that have been reported to FedEx as being incorrect.

25.    As a consequence, many of the cellphone numbers to which Defendant and/or its agents send the package delivery notifications are inaccurate, or have become inaccurate.  As a result, Defendant routinely sends automated text messages to individuals who have never provided consent to be texted by FedEx for any purpose.

26.    Plaintiffs are recipients of such unsolicited and unwanted automated text messages sent by FedEx.

27.    For example, beginning in or about 2016, Plaintiff Johnston began receiving unsolicited and unwanted text messages to her cellular phone (716-640-XXXX) from FedEx such as the following sent from SMS Code 46339:



28.     On each occasion, FedEx was apparently attempting to notify a customer regarding the status of a package delivery.

29.     However, Plaintiff Johnston had no connection to the apparent customer or package delivery whatsoever.   Nor did she ever give FedEx permission to send her text messages.   Moreover, Plaintiff Johnston's cellphone number has been registered on the National Do Not Call registry for approximately 2-3 years.

30.     Plaintiff Johnston estimates that she received more than 7 unauthorized and unsolicited text messages from FedEx to her cellular phone over the last four (4) years—all placed for the purpose of contacting some unknown customer to whom she has no connection whatsoever.   What's more, Plaintiff Johnston recollects texting "STOP" to cancel the text messages at one point, however, she continued to receive the unauthorized and unsolicited text

messages. Indeed, Plaintiff Johnston received an unauthorized and unsolicited text message from FedEx as recently as November of 2018.

31.     Plaintiff Pepicelli had a similar experience with FedEx. Beginning in or about August of 2017, Plaintiff Pepicelli began receiving unsolicited and unwanted text messages to his cellular phone (202-617-XXXX) from FedEx sent from SMS Code 46339.

32.     However, Plaintiff Pepicelli had no connection to the apparent customer or package delivery whatsoever. Nor did he ever give FedEx permission to send him text messages. Moreover, Plaintiff Pepicelli's cellphone number has been registered on the National Do Not Call registry for 2 years.

33.     Plaintiff Pepicelli estimates that he received more than 6 unauthorized and unsolicited text messages from FedEx to his cellular phone over the last four (4) years—all placed for the purpose of contacting some unknown customer to whom he has no connection whatsoever. In addition, Plaintiff Pepicelli believes he may have texted "STOP" to cancel the text messages at one point but still continued to receive them.

34.     Plaintiffs believe the unauthorized text messages were sent by FedEx because they indicate FedEx is the sender and contain a website link attributed to FedEx. In addition, according to the U.S. Short Code Directory, the SMS Code from which the text messages were sent is owned by FedEx. *See* https://usshortcodedirectory.com/directory/short-code-46339/.

35.     On information and belief, when contacting consumers, FedEx uses an outbound calling system that automatically texts a list of telephone numbers stored by Defendant based on certain automated criteria. Defendant's outbound dialing system is therefore an 'automatic telephone dialing system' within the meaning of the TCPA. The impersonal nature of the text

messages and the use of short-code further demonstrates these messages were placed with an ATDS.

36.     The text messages were annoying and harassing to Plaintiffs, and an invasion of their privacy.  They violated the TCPA because they were sent without Plaintiffs' prior express consent.

37.     Not surprisingly, FedEx's unlawful telemarketing practices have led to significant backlash from consumers.   The internet is bereft with online reviews from consumers complaining about Defendant's unlawful practices such as the following:[3]

> Donna   July 24, 2018                                    Reply
>
> I get daily text messages from 46339. They claim to be from FedEx. They want to know if I want to receive text messages about packages coming (none are supposed to be coming). I thought it was from FedEx. They say no, yet that short code is mentioned on the Fed Ex site. I am supicious that the 46339 is not really coming from there. When I looked in my recent calls, I happened to notice today the number 1-800-463-3339 going out (could have been when I replied STOP to short code). It said the party was "unavailable." When I called the number, it said it was Fed Ex. I am so confused! How can I block a short code 463339 number from coming through to my android cell phone. I blocked the 800-463-3339 from coming by using blocking on Verizon Wireless, but I do not know if that will block the associated short code. Can you help? I am getting these texts 2-3 times daily. We are staying in a tiny upstairs storage area in a house while our hurricane flooded house is being rebuilt, and this is not helping our stress levels, but I cannot afford to turn off my cell. Donna in Texas

---

[3] Reviews available at: http://shortcodes.org/uncategorized/46339-short-code/;
https://usshortcodedirectory.com/directory/short-code-37473/, last accessed November 21, 2018.

 **Michele De Smet** on January 18, 2018 at 3 34 am

I keep getting the same messages! Have had 3  All originating in NJ and shipped to FL. Fed Ex seems to not be taking this seriously  Calling FBI

 **Anonymous** on May 4, 2018 at 9:15 am

I just got a text yesterday  It says:
Free FedEx alert  Signature req'd for package delivery by   fedex com/780806412571/en_US  Reply STOP to stop msgs.

Is this legit?

38.     Moreover, even though FedEx has the resources and technological capability to immediately cease placing such unauthorized and unsolicited automated text messages upon request, it has implemented policies, practices or procedures that prevent such requests from being honored.  As such, FedEx's policies, practices and procedures for honoring do-not-call requests are not reasonable, and are insufficient to prevent calls from being made to persons who request to no longer receive them.

39.     By sending the unauthorized texts alleged herein, FedEx has caused consumers (including Plaintiffs) actual harm and cognizable legal injury.   In addition to being an aggravating invasion of privacy, unsolicited automated text messages such as the ones FedEx sent here actually cost recipients money because recipients such as Plaintiffs and Class members must frequently pay their cellular telephone service providers for the texts they receive, incur a usage deduction to their cell phone plan, or pay a fixed or variable usage fee regardless of whether the text is authorized.  Furthermore, the messages interfered with Plaintiffs' and Class members' use and enjoyment of their cellphones, including the related data, software, and

hardware components. FedEx also caused substantial injury to their cellphones by causing wear and tear on their property, consuming battery life, and in some cases appropriating cellular data.

40.    In order to redress these injuries, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring suit under the TCPA for statutory damages of $500 to $1,500 per text message.

41.    On behalf of the Class, Plaintiffs also seek an injunction requiring Defendant to cease placing unsolicited text messages to consumers until such time as they receive prior express consent from all such persons.

## CLASS ACTION ALLEGATIONS

42.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

43.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

44.    Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

### The Wrong Number Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant, or some person acting on Defendant's behalf, sent one or more text messages to their cellular telephone through the use of an automatic telephone dialing system where the recipient was not the same individual who, according to Defendant's records, was texted.

### The Revocation Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant, or some person acting on Defendant's behalf, sent one or more text messages through the use of an automatic telephone dialing system after communicating to Defendant, as shown by Defendant's records, a request that Defendant stop sending text messages to their telephone number.

Collectively, all these persons will be referred to as "Class members." Plaintiffs represent, and are members of, the Classes.

45.     Excluded from the Classes is Defendant, and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiffs' counsel and Plaintiffs' counsel's staff.

46.     Plaintiffs do not know the exact number of members of the Classes, but Plaintiffs reasonably believe the Class members number, at minimum, in the hundreds to thousands.

47.     Plaintiffs and all members of the Classes have been harmed by the acts of Defendant.

48.     This Class Action Complaint seeks injunctive relief and money damages.

49.     The joinder of all Class Members is impracticable due to the size and relatively modest value of each claim.

50.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

51.     Further, the Classes can be identified easily through records maintained by Defendant and/or its agents.

52.     There are well-defined, nearly identical, questions of law and fact affecting all parties.

53.     The questions of law and fact, referred to above, involving the Class claims predominate over questions which may affect individual Class members.

54.     Such common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendant used an automatic telephone dialing system in sending text messages to Class members' cell phones;

b.      Whether Defendant can meet its burden of showing it obtained prior express consent to send the text messages at issue;

c.      Whether Defendant's conduct was knowing and/or willful;

d.      Whether Defendant is liable for statutory damages; and

e.      Whether Defendant should be enjoined from engaging in such conduct in the future.

55.     As persons who received (i) text messages via an automatic telephone dialing system from FedEx; and (ii) requested that FedEx stop sending text messages to their cellular phones but still continued to receive such messages, Plaintiffs assert claims that are typical of each Class member.

56.     Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes.

57.     Plaintiffs have no interests which are antagonistic to any member of the Classes.

58.     Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

59.     A class action is the superior method for the fair and efficient adjudication of this controversy.

60.     Class wide relief is essential to compel Defendant to comply with the TCPA.

61.     The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

62.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims.

63.     Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.

64.     Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### Count I

### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

65.     Plaintiffs incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

66.     The foregoing acts and omissions of Defendant constitute violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq.*, and its implementing regulations.

67.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every text sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

68.     Plaintiffs and members of the Classes are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

69.     Plaintiffs and members of the Classes are also entitled to an award of attorneys' fees and costs as provided by law.

**Count II**

**Knowing and/or Willful Violations
of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***

70.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

71.    The foregoing acts and omissions of the Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

72.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to treble damages of up to $1,500 for each and every text sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

73.    Plaintiffs and all members of the Classes are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

74.    Plaintiffs and all members of the Classes are also entitled to an award of attorneys' fees and costs as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against Defendant:

A.    Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B.    As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

15

C.      As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D.      An award of attorneys' fees and costs to counsel for Plaintiffs and the Classes;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes; and

G.      Such other relief as the Court deems just and proper.

Dated: November 28, 2018                    Respectfully submitted,

Gary E. Mason
Jennifer S. Goldstein (*pro hac vice forthcoming*)
**WHITFIELD BRYSON & MASON LLP**
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016
Phone: 202.640.1160
Fax: 202429-2294
Email: gmason@wbmllp.com

Gary M. Klinger (*pro hac vice forthcoming*)
**KOZONIS & KLINGER, LTD.,**
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 773.545.9607
Fax: 773.496.8617
gklinger@kozonislaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

16