## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

ANTHONY PEPICELLI
4804 Fox Street
College Park, MD 20740,

*individually and on behalf of all others
similarly situated,*

|  |  |
|---|---|
| Plaintiff, | |
| v. | Case No. 18-cv-03653-PWG |
| FEDEX CORPORATE SERVICES, INC., | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| 942 South Shady Grove Road | |
| Memphis, TN 38120, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Anthony Pepicelli, individually and on behalf of all other persons similarly

situated, by his attorneys, for his First Amended Class Action Complaint against Defendant, FedEx

Corporate Services, Inc. ("FedEx") alleges the following:

## NATURE OF THE ACTION

1.      In an effort to promote FedEx's domestic and international package delivery

services, FedEx violated federal law by sending unauthorized and unsolicited automated text

messages to the cellphones of consumers throughout the nation without their consent.

2.      By initiating these unauthorized texts, FedEx has violated the called parties'

statutory rights and has caused the call recipients actual harm, not only because the called parties

were subjected to the aggravation and invasion of privacy that necessarily accompanies unsolicited

text messages, but also because the recipients, like Plaintiff, must incur a usage allocation

deduction from their phone plans, notwithstanding that the texts were sent in violation of specific legislation on the subject.

3.      In order to redress these injuries, Plaintiff, on behalf of himself and the proposed Class alleged herein, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), which protects the privacy right of consumers to be free from receiving unsolicited automated text messages.

4.      On behalf of the proposed Class, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized automated texting activity and an award of actual and statutory damages to the members of the Class, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5.      The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq.*

6.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.  Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a nationwide class, which will result in at least one class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

7.      Venue is proper in this District because a substantial portion of the events complained of occurred here.  In particular, Defendant sent and/or initiated unauthorized text messages to Plaintiff who lives in this District.

2

## PARTIES

8.      Plaintiff, Anthony Pepicelli, is a citizen of the State of Maryland residing in the

City of College Park, Prince George's County.

9.      Defendant FedEx is a Delaware corporation with its principal place of business

located in Memphis, Tennessee.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

10.     In 1991, Congress enacted the TCPA in response to a growing number of

consumer complaints regarding certain telemarketing practices.

11.      Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

> It shall be unlawful for any person within the United States, or any
> person outside the United States if the recipient is within the
> United States—
>
> (A) to make any call (other than a call made for emergency
> purposes or made with the prior express consent of the called
> party) using any automatic telephone dialing system ("ATDS") or
> an artificial or prerecorded voice—
>
> \*       \*       \*
>
> (iii) to any telephone number assigned to a paging service, cellular
> telephone service, specialized mobile radio service, or other radio
> common carrier service, or any service for which the called party is
> charged for the call, unless such call is made solely to collect a
> debt owed to or guaranteed by the United States.

12.     Thus, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use

of ATDSs or autodialers to make any call to a wireless number in the absence of an emergency or

the prior express consent of the called party.

13.     The term "call" has been interpreted to include both voice and text calls.  Thus,

"call" within the meaning of the TCPA includes text messages placed to consumers' cellular

phones. *See, e.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

14.     According to findings by the Federal Communication Commission ("FCC"), the

3

agency Congress vested with authority to issue regulations implementing the TCPA and whose regulations are generally binding, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls (including text messages) are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

16.     This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553, at *8 (9th Cir. Sept. 20, 2018) (emphasis supplied).[1]

17.     Predictive dialers fall within the scope of the term 'automatic telephone dialing system.' *See Marks*, 2018 WL 4495553, at *8 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common

---

[1] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

technology at that time—language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.").[2]

18.     Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA.   *See, e.g., Marks*, 2018 WL 4495553 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.*") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

19.     The FCC has also issued a Declaratory Ruling confirming that autodialed calls (including text messages) and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

20.     Under the TCPA, the burden is on the sender – here, FedEx – to obtain, document, and prove prior express consent.

## **FACTUAL ALLEGATIONS**

21.     FedEx, a worldwide shipper of packages, ordinarily provides its shipping services

---

[2] Previously, the FCC has explained that while previous autodialers generated random numbers to call, "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003). So a predictive dialer, which "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," *id.* at 14091, "constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," 23 F.C.C. Rcd. at 566. In other words, an autodialer "has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) ("2012 FCC Ruling").

to consumers on a fee-for-shipment basis, whereby consumers agree to pay a set fee upon placement of an order for a package to be shipped to a given destination.

22.     As an ordinary business practice, FedEx collects the cellphone numbers of its customers when a customer account is opened and/or when an order is placed.  FedEx and/or its agents then use the customers' cell phone numbers to send them text messages in order to notify them about the status of their package deliveries.

23.     In an effort to cut costs associated with the automated texting services, FedEx and/or its agents fail to employ the procedures and safeguards necessary to ensure that the telephone numbers to which Defendant sends its automated texts actually belong to the customers to whom the texts are intended, and to honor requests to stop sending such texts to cellphone numbers that have been reported to FedEx as being incorrect.

24.     As a consequence, many of the cellphone numbers to which Defendant and/or its agents send the package delivery notifications are inaccurate, or have become inaccurate.  As a result, Defendant routinely sends automated text messages to individuals who have never provided consent to be texted by FedEx for any purpose.

25.     Plaintiff is a recipient of such unsolicited and unwanted automated text messages sent by FedEx.

26.     For example, beginning in or about August of 2017, Plaintiff Pepicelli began receiving unsolicited and unwanted text messages to his cellular phone (202-617-XXXX) from FedEx.

27.     However, Plaintiff Pepicelli had no connection to the apparent customer or package delivery whatsoever.  Nor did he ever give FedEx permission to send him text messages. Moreover, Plaintiff Pepicelli's cellphone number has been registered on the National Do Not Call

registry for 2 years.

28.     Plaintiff Pepicelli estimates that he received more than 6 unauthorized and unsolicited text messages from FedEx to his cellular phone over the last four (4) years—all placed for the purpose of contacting some unknown customer to whom he has no connection whatsoever.

29.     Plaintiff believes the unauthorized text messages were sent by FedEx because they indicated FedEx is the sender.

30.     On information and belief, when contacting consumers, FedEx uses an outbound calling system that automatically texts a list of telephone numbers stored by Defendant based on certain automated criteria.   Defendant's outbound dialing system is therefore an 'automatic telephone dialing system' within the meaning of the TCPA.   The impersonal nature of the text messages and the use of short-code further demonstrates these messages were placed with an ATDS.

31.     The text messages were annoying and harassing to Plaintiff, and an invasion of his privacy.   They violated the TCPA because they were sent without Plaintiff's prior express consent.

32.     Not surprisingly, FedEx's unlawful telemarketing practices have led to significant backlash from consumers.   The internet is bereft with online reviews from consumers complaining about Defendant's unlawful practices such as the following:[3]

---

[3] Reviews available at: http://shortcodes.org/uncategorized/46339-short-code/;
https://usshortcodedirectory.com/directory/short-code-37473/, last accessed November 21, 2018.

 Donna   July 24, 2018                                    Reply

I get daily text messages from 46339. They claim to be
from FedEx. They want to know if I want to receive text
messages about packages coming (none are supposed to
be coming). I thought it was from FedEx. They say no, yet
that short code is mentioned on the Fed Ex site. I am
supicious that the 46339 is not really coming from there.
When I looked in my recent calls, I happened to notice
today the number 1-800-463-3339 going out (could have
been when I replied STOP to short code). It said the party
was "unavailable." When I called the number, it said it was
Fed Ex. I am so confused! How can I block a short code
463339 number from coming through to my android cell
phone. I blocked the 800-463-3339 from coming by using
blocking on Verizon Wireless, but I do not know if that will
block the associated short code. Can you help? I am
getting these texts 2-3 times daily. We are staying in a tiny
upstairs storage area in a house while our hurricane
flooded house is being rebuilt, and this is not helping our
stress levels, but I cannot afford to turn off my cell. Donna
in Texas

 **Michele De Smet** on January 18, 2018 at 3:34 am

I keep getting the same messages! Have had 3. All originating in NJ and shipped to FL. Fed Ex seems to not
be taking this seriously. Calling FBI

 **Anonymous** on May 4, 2018 at 9:15 am

I just got a text yesterday. It says:
Free FedEx alert: Signature req'd for package delivery by . fedex.com/780806412571/en_US. Reply STOP to
stop msgs.

Is this legit?

33.    By sending the unauthorized texts alleged herein, FedEx has caused consumers (including Plaintiff) actual harm and cognizable legal injury.  In addition to being an aggravating invasion of privacy, unsolicited automated text messages such as the ones FedEx sent here actually cost recipients money because recipients such as Plaintiff and Class members must frequently incur a usage deduction to their cell phone plan, and/or pay a fixed or variable usage fee regardless of whether the text is authorized.  Furthermore, the messages interfered with Plaintiff's and Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components.  FedEx also caused substantial injury to their cellphones by causing wear and tear on their property, consuming battery life, and in some cases appropriating cellular data.

34.    In order to redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA for statutory damages of $500 to $1,500 per text message.

35.    On behalf of the Class, Plaintiff also seeks an injunction requiring Defendant to cease placing unsolicited text messages to consumers until such time as they receive prior express consent from all such persons.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

37.    Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

38.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

### The Wrong Number Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant, or some person acting on Defendant's behalf, sent one or more text messages to their cellular telephone through the use of an automatic telephone dialing system where the recipient was not the same individual who, according to Defendant's records, was texted.

Collectively, all these persons will be referred to as "Class members."  Plaintiff represents, and is a member of, the Class.

39.     Excluded from the Class is Defendant, and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiff's counsel and Plaintiff's counsel's staff.

40.     Plaintiff does not know the exact number of members of the Class, but Plaintiff reasonably believe the Class members number, at minimum, in the hundreds to thousands.

41.     Plaintiff and all members of the Class have been harmed by the acts of Defendant.

42.     This Class Action Complaint seeks injunctive relief and money damages.

43.     The joinder of all Class Members is impracticable due to the size and relatively modest value of each claim.

44.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

45.     Further, the Class can be identified easily through records maintained by Defendant and/or its agents.

46.     There are well-defined, nearly identical, questions of law and fact affecting all parties.

47.     The questions of law and fact, referred to above, involving the Class claims

predominate over questions which may affect individual Class members.

48.     Such common questions of law and fact include, but are not limited to, the following:

     a.     Whether Defendant used an automatic telephone dialing system in sending text messages to Class members' cell phones;

     b.     Whether Defendant can meet its burden of showing it obtained prior express consent to send the text messages at issue;

     c.     Whether Defendant's conduct was knowing and/or willful;

     d.     Whether Defendant is liable for statutory damages; and

     e.     Whether Defendant should be enjoined from engaging in such conduct in the future.

49.     As a person who received text messages via an automatic telephone dialing system from FedEx, Plaintiff asserts claims that are typical of each Class member.

50.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

51.     Plaintiff has no interests which are antagonistic to any member of the Class.

52.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

53.     A class action is the superior method for the fair and efficient adjudication of this controversy.

54.     Class wide relief is essential to compel Defendant to comply with the TCPA.

55.     The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

56.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims.

57.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

58.     Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### Count I

### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

59.     Plaintiff incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     The foregoing acts and omissions of Defendant constitute violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq.*, and its implementing regulations.

61.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every text sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

62.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

12

63.     Plaintiff and members of the Class are also entitled to an award of attorneys' fees and costs as provided by law.

## Count II

### Knowing and/or Willful Violations
### of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

64.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

65.     The foregoing acts and omissions of the Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

66.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to treble damages of up to $1,500 for each and every text sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

67.     Plaintiff and all members of the Class are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

68.     Plaintiff and all members of the Class are also entitled to an award of attorneys' fees and costs as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A.     Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B.      As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C.      As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

G.      Such other relief as the Court deems just and proper.

Dated: March 26, 2019                    Respectfully submitted,

                                        **ANTHONY PEPICELLI**

                                        /s/ *Gary E. Mason*
                                        Gary E. Mason
                                        WHITFIELD BRYSON & MASON LLP
                                        5101 Wisconsin Ave., NW, Ste. 305
                                        Washington, DC 20016
                                        Phone: 202.640.1160
                                        Fax: 202429-2294
                                        Email: gmason@wbmllp.com

                                        /s/ *Gary M. Klinger*
                                        Gary M. Klinger (*pro hac vice*)
                                        **Kozonis & Klinger, Ltd.,**
                                        4849 N. Milwaukee Ave., Ste. 300
                                        Chicago, Illinois 60630
                                        Phone: 773.545.9607
                                        Fax: 773.496.8617
                                        gklinger@kozonislaw.com


                                        *Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and correct copy of the foregoing has been served via the Court's ECF system on this the 26th day of March, 2019 on the following:

John W. Campbell (admitted pro hac vice)
3620 Hacks Cross Road
Building B, Second Floor
Memphis, Tennessee 38125
Phone: (901) 434-8403
jwcampbell@fedex.com

Michael C. McLaren (admitted pro hac vice)
3620 Hacks Cross Road
Building B, Second Floor
Memphis, Tennessee 38125
Phone: (901) 434-3000
michael.mclaren@fedex.com

Peter D. Blumberg (#41358)
3620 Hacks Cross Road
Building B, Second Floor
Memphis, Tennessee 38125
Phone: (901) 434-8489
peter.blumberg@fedex.com

        By: /s/ Gary E. Mason