**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **ANTHONY PEPICELLI** *individually and on behalf of all others similarly situated*, | * * |
| **Plaintiffs**, | * |
| v. | *   Case No.: 18-cv-03653-PWG |
| **FEDEX CORPORATE SERVICES, INC.**, | * |
| **Defendant.** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anthony Pepicelli, individually and on behalf of all others similarly situated, filed suit against Defendant, FedEx Corporate Services, Inc. ("FedEx"), asserting a violation of the plaintiff's rights under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). Am. Compl., ECF No. 30. Pending before the Court is Defendant's Motion for Summary Judgment, ECF No. 36.[1] FedEx argues that the Court should grant its Motion for Summary Judgment because the text messages were sent pursuant to an exemption to the TCPA granted by the Federal Communications Commission ("FCC"). Mot. Mem. 2, ECF No. 36-1. The Court is required to grant motions for summary judgment when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact

---

[1] The motion has been fully briefed. *See* ECF No. 36, ECF No. 37, ECF No. 38. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018).

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). Because I find that there is no genuine dispute of material fact regarding the texts being sent pursuant to an exemption to the TCPA, the Motion for Summary Judgment is GRANTED.

## BACKGROUND

### I. Factual Background

FedEx collects the cellphone numbers of its customers in its ordinary course of business. Am. Compl. 6. FedEx uses cellphone numbers to send customers text messages in order to notify them about the status of their package deliveries. *Id.* Pepicelli claims to be a recipient of unsolicited and unwanted automated text messages sent by FedEx to his cellphone. *Id.* Pepicelli began receiving text messages from FedEx on or around August of 2017. *Id.* He claims to have no connection to the customer or the packages related to the text messages received. *Id.* Pepicelli also asserts that his cellphone number has been registered on the National Do Not Call Registry for two years prior to the filing of this suit. *Id.* at 6-7. Pepicelli estimates to have received more than six unauthorized and unsolicited text messages from FedEx over a period of four years. *Id.* at 7. He was not charged for any of the text messages. Mot. Mem. at 6. He received no text messages in the form of telemarketing, solicitation, or advertising, and they were all less than 160 characters. *Id.* Pepicelli was offered the ability to opt out of receiving future delivery notification calls and messages by replying "STOP" to the text messages, but he did not. *Id.* at 7.

The content of each individual text message sent to Pepicelli was a variation of the following:

> Free FedEx alert: Signature req'd by someone at your address for package delivery 08/17. fedex.com/776980090563/en_US. Reply STOP to stop msgs.

*Id.* at 7-8 (citing Mot. Ex. C ¶ 13, ECF No. 36-4). FedEx reports that Pepicelli was sent a total of 20 text messages between August 16, 2016 and October 15, 2018. *Id.* Six of the messages were related to packages where the package recipient name was Anthony Pepicelli, and in each case, the cellphone number was provided by the shipper as the number for the package recipient, and only one message per package was sent. Mot. Ex. C ¶¶ 5, 11. Pepicelli does not dispute this but asserts that he received more than ten unauthorized texts sent to his cellular phone. Pl.'s Resp. 1, 5, ECF No. 37.

## II.    Procedural Background

On November 28, 2018, Pepicelli and Amberlyn Johnston filed a purported class action complaint against FedEx. Compl., ECF No. 1. In February 2019, the parties participated in a status conference with the Court, during which it was determined that it would be efficient to resolve a potentially dispositive legal issue before addressing class claims, and an amended scheduling order was approved. *See* ECF Nos. 24-27. Plaintiffs then moved to amend their original Complaint to dismiss Amberlyn Johnston's claims, and the motion was granted as unopposed. ECF Nos. 28-29.[2]

The First Amended Class Action Complaint alleging that FedEx violated federal law by sending unauthorized and unsolicited automated text messages to the cellphones of consumers without their consent was filed on March 26, 2019, and it is the operative Complaint. Am. Compl., ECF No. 30. Pepicelli specifically alleges that by initiating these unauthorized texts, FedEx violated his statutory rights, which resulted in actual harm. *Id.* at 1-2. Pepicelli alleges two causes of action: (1) Violations of the TCPA; and (2) Knowing and/or Willful Violations of the TCPA.

---

[2]    Amberlyn Johnston was terminated on March 29, 2019 and recorded by the clerk on April 1, 2019 in accordance with the Amended Complaint, ECF No. 30.

*Id.* at 12-13. He seeks an injunction requiring FedEx to cease all unauthorized automated texting activity, an award of actual and statutory damages to Plaintiff and members of the class, including treble damages for willful violation, and attorneys' fees. *Id.* at 2, 13-14.

Currently pending before the court is Defendant's Motion for Summary Judgment, ECF No. 36. In brief, it contends that the alleged texts were sent pursuant to an exemption to the TCPA ("the Exemption") as established by the FCC. Mot. Mem. 1-2. Because of the Exemption, FedEx contends that the TCPA was not violated, and requests that judgment be granted in its favor as a matter of law. *Id.*

## III. Statutory Background

### A. Telephone Consumer Protection Act

In 1991, Congress passed the Telephone Consumer Protection Act ("TCPA"). It was enacted in response to a growing number of consumer complaints regarding telemarketing practices. The purpose of this bill was "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ([f]ax) machines and automatic dialers." S. REP. 102-178, 1, 1991 U.S.C.C.A.N. 1968, 1968. The legislation was introduced as a result of increased consumer complaints directly related to unwanted advertising and solicitation from telemarketing phone calls. *Id.* The TCPA states,

> [i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-- to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-- to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the

> called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B). Federal courts have held that while the TCPA does not expressly define "call," as referenced in 47 U.S.C. § 227(b)(1)(A)(iii), the Federal Communications Commission ("FCC") has determined that the TCPA "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls . . . ." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003). The FCC further ruled that the "prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages (e.g., phone-to-phone SMS)." *Id.* (quoting *In the Matter of Rules and Regulations Implementing the Controlling the Assault of Non–Solicited Pornography and Marketing Act of 2003; Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 19 FCC Rcd. 15927, 15934 (August 12, 2004)).

When the TCPA was enacted, Congress authorized the FCC to implement exemptions for commercial calls that "(I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement." 47 U.S.C. § 227(b)(2)(B)(ii). Congress further authorized the FCC to exempt by rule or order "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect." 47 U.S.C. § 227(b)(2)(C).

5

B.     **Federal Communications Commission Exemption**

In 2012, the Cargo Airline Association ("CAA") filed a "Petition for Expedited Declaratory Ruling" ("the Petition") with the FCC. *In the Matter of Cargo Airline Association Petition for Expedited Declaratory Ruling* ("FCC 14-32 Order"), 29 FCC Rcd. 3432, 3433 (Mar. 27, 2014). The CAA sought a clarification that package delivery companies can rely upon the information provided by the package sender, including representations by a package sender that it has obtained the requisite prior consent from the recipient to send informational calls and texts related to package delivery. *Id.* Alternately, the CAA asked the FCC to declare package delivery notifications exempt from the TCPA's consent requirements for calls and text messages to cellphone numbers that are not charged for the call or text message. *Id.*[3] After seeking public comment, the FCC granted CAA's request "to exempt its proposed free-to-end-user notifications to consumers' wireless phones, subject to certain conditions." *Id.* at 3425. Specifically, the FCC found that "CAA has identified means to ensure the notifications are not charged to consumers, and a set of conditions on the notifications that, with the modifications we describe here, are consistent with the TCPA's privacy goals." *Id.* Because the FCC granted the exemption request, it did not reach the request for clarification. *Id.*

First, the FCC determined that CAA members could provide notifications without charge. *Id.* at 3435-36. Second, the FCC found that the CAA's seven proposed conditions, with some modifications, protected consumers' privacy interests. *Id.* at 3436. The FCC adopted four of the

---

[3]     The FCC noted that in 1992, it had "concluded that cellular carriers need not obtain additional consent from their cellular subscribers prior to initiating autodialed or prerecorded calls for which the cellular subscriber is not charged. Congress, however, added the Section 227(b)(2)(C) exemption provision to the statute after this 1992 Commission ruling." FCC 14-32 Order, 29 FCC Rcd. at 3433 n. 25 (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, 8774, para. 45 (1992) (1992 TCPA Order); *Telephone Disclosure and Dispute Resolution Act*, Pub. L. No. 102-556, 106 Stat 4181 (1992)).

6

CAA's proposed conditions without modification, and three conditions "with modest, but important, changes essential to the protection of consumers' privacy interests." *Id.* The FCC determined that text messages are exempted from the regulations established by the TCPA if they meet the following seven conditions:

> 1) a notification must be sent, if at all, only to the telephone number for the package recipient;
>
> 2) notifications must identify the name of the delivery company and include contact information for the delivery company;
>
> 3) notifications must not include any telemarketing, solicitation, or advertising content;
>
> 4) voice call and text message notifications must be concise, generally one minute or less in length for voice calls and one message of 160 characters or less in length for text messages;
>
> 5) delivery companies shall send only one notification (whether by voice call or text message) per package, except that one additional notification may be sent to a consumer for each of the following two attempts to obtain the recipient's signature when the signatory was not available to sign for the package on the previous delivery attempt;
>
> 6) delivery companies relying on this exemption must offer parties the ability to opt out of receiving future delivery notification calls and messages and must honor the opt-out requests within a reasonable time from the date such request is made, not to exceed thirty days; and,
>
> 7) each notification must include information on how to opt out of future delivery notifications; voice call notifications that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make an opt-out request prior to terminating the call; voice call notifications that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future package delivery notifications; text notifications must include the ability for the recipient to opt out by replying "STOP."

*Id.* at 3437–38. The FCC found that "these notifications are the types of normal, expected communications the TCPA was not designed to hinder." *Id.* The FCC further noted that "a

delivery company may not claim this exemption for any text that is charged to the called party"[4] and "and will not be liable for any message that is not charged to the called party and is compliant with the stated conditions." *Id.* at 3436.

## STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin*, 714 F.3d at 833. "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Cole v. Prince George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. *Anderson*, 477 U.S. at 247-48. Rather, the burden shifts to the nonmoving party to identify evidence showing that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251-52. Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Id.* at 248–49.

---

[4] Including ensuring that the charge does not count against plan minutes or text message limits. FCC 14-32 Order, 29 FCC Rcd. at 3432.

In reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party if there is a genuine dispute as to those facts. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**DISCUSSION**

In this case, Pepicelli asserts that the text messages sent by FedEx to his cellphone violated the TCPA because they were sent to his cellular device through an "automatic telephone dialing system" without him having given prior written consent. *See* Pl.'s Ex. A at 8, ECF No. 37-1. FedEx, however, argues that the text messages sent to Pepicelli fall under the Exemption established by the FCC, and therefore, they did not violate the TCPA. Mot. Mem. 2.

Here, there is no dispute that the messages that FedEx sent satisfy six of the seven FCC exemption conditions. But Pepicelli argues that the first condition was not satisfied because it states that the message can be sent only "to the telephone number for the <u>package recipient</u>." Pl.'s Resp. 2, 11-12. Pepicelli argues that it is undisputed that he was not the "package recipient" for all of the text messages sent by FedEx.[5] *Id.* He asserts that according to the plain language of the

---

[5] Although from the records of the messages sent to Pepicelli's cellphone number, it appears that 6 of the 20 messages show the package recipient name as Anthony Pepicelli. Pl.'s Ex. C 7-8, ECF No. 37-1. One of the recipients was identified as Karen Pepicelli. *Id.* All 20 messages were from a shipper identified as TracFone, who designated Pepicelli's number as the package recipient. *Id.* at 4, 8. In Pepicelli's answer to Interrogatory No. 7, he estimates that he made approximately 20 purchases from TracFone between

9

Exemption, robocalls to consumers are not exempted from TCPA liability if they were sent to someone other than the actual package recipient's cellphone number, regardless whether the number was supplied by the shipper. *Id.* In the alternative, Pepicelli argues that the Exemption should be found unconstitutional as a content-based restriction on free speech. *Id.* at 1-2, 14. FedEx asserts that the only reasonable interpretation of the first condition is that it refers to the telephone number that was supplied by the shipper "for" the package recipient, as opposed to the number "of" or "belonging to" the package recipient. Mot. Mem. 15-16. FedEx contends that this is the only interpretation that is consistent with the intention and purpose of the Exemption, the language in the remainder of the Exemption, as well as with the CAA's petition that was granted by the Exemption Order. *Id.* at 11-13.

To resolve this dispute, I must interpret the language of FCC's regulatory exemption to the TCPA statute, specifically the meaning of "the telephone number for the package recipient." Generally, a court charged with interpreting statutory text must "look to the phrase's 'ordinary, contemporary, common meaning, absent an indication Congress intended' the statute's language 'to bear some different import.'" *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (quoting *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009) ); *see United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 2018 WL 5016610, at *8 (D. Md. 2018) (same). Additionally, the court "cannot adopt a reading of [the statute] that renders part of the statute superfluous over one that gives effect to its 'every clause and word,'" as doing so would violate the "well-established rule against surplusage." *United States v. Simms*, 914 F.3d 229, 241 (4th Cir. 2019) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)) (quoting *Inhabitants of*

---

2016-2019, as part of his business selling cellular phones, parts, and TracFone SIM cards. Pl.'s Ex. A 12-13, ECF No. 37-1.

10

*Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883)). Thus, to "drain [a] phrase ... of any effect" would "violat[e] a cardinal rule of statutory construction." *Id.*

Considering the language used ("the telephone number for the package recipient"), the context in which the language was used, and the broader context of the regulation and the statute as a whole, I find that the first exemption condition is met if the notification is sent to the telephone number provided by the shipper for the package recipient. The regulation uses the term "for" the package recipient (as opposed to "of" the recipient), which is broader than a requirement that the number actually belong to the person receiving the package. "For" is a function word, which in this context, refers to "on behalf of" or "in favor of" the package recipient. *See* https://www.merriam-webster.com/dictionary/for. The regulation does not specify the person or entity that must provide the telephone number for the package recipient. But the only reasonable interpretation of this language is that it includes the shipper of the package, as that is the person or entity that determines the method of shipping that will be used and makes the arrangements with the shipper for the delivery.

The CAA's Petition to the FCC stated that the first condition should be based on the number given to the delivery service. *See* Def.'s Ex. B 2, ECF No. 36-3. The drafter of the Petition came to this determination because of the self-evident fact that delivery companies "do not have any direct contact with package recipients until the package has been shipped (and usually only at the time of delivery)." *Id.* Looking to the purposes of the TCPA—"to prevent abusive telephone marketing practices"[6]—combined with the objective of the FCC exemption, which is "to allow package delivery companies to alert wireless consumers about their packages, as long as

---

[6] *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 648 (4th Cir. 2019).

consumers are not charged and may easily opt out of future messages if they wish,"[7] the common sense result is that the first condition permits the notification to be sent to the telephone number that was provided to the shipping company by the person or entity sending the package to its recipient.

"[C]ontext is indisputably relevant to determining whether a particular call is actionable under the TCPA." *Ryabyshchuck v. Citibank (South Dakota) N.A.*, No. 11–CV–1236–IEG (WVG), 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012). Courts have held that a single, confirmatory text message is not a violation of the TCPA, and when a recipient of an autodialed text has revoked consent, the text sender may immediately send one final autodialed text to confirm the recipient's opt-out request. *See, e.g.*, *Ryabyshchuck*, 2012 WL 5379143 at *3; *FCC Enforcement Advisory No. 2016-06*, 31 FCC Rcd. 12615, 12616-17 (Nov. 18, 2016). Also, when a caller reasonably relies on prior express consent and does not discover that the number has been reassigned to another party prior to making the call or text, the caller is not liable for the first call or text. *FCC Enforcement Advisory No. 2016-06*, 31 FCC Rcd. at 12617. Here, the FCC agreed to allow "free to end user" text messages related to the package delivery to provide a needed service without undue exposure to TCPA liability. FCC 14-32 Order, 29 FCC Rcd. at 3438. By including the condition that only one notification could be sent to a consumer for each package combined with a condition that the recipient could easily opt out of future notifications, the FCC recognized the reality of how the package delivery process works, and the benefits to consumers, while providing protection for consumers' privacy rights. *See id.* at 3436-39 ("Taken as a whole, we find that these conditions simultaneously fulfill our statutory obligation to protect consumers'

---

[7]   FCC 14-32 Order, 29 FCC Rcd. at 3432.

privacy interest in avoiding unwanted calls while allowing package delivery companies a reasonable time in which to implement opt-out elections.").

Under the circumstances in this case, FedEx satisfied all the conditions of the Exemption, and although each text message sent had a "STOP" option that allowed Pepicelli to easily opt out, he chose not to exercise this option. Therefore, FedEx has a complete defense to Pepicelli's claims, and it did not violate the TCPA. FedEx's motion for summary judgment is GRANTED.

This Court lacks jurisdiction to review Pepicelli's alternate argument that the FCC Exemption Order is unconstitutional; if Pepicelli wishes to challenge the FCC Order, he must file an action in "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) [which] has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the Federal Communications Commission . . . ." 28 U.S.C. § 2342.

**ORDER**

Accordingly, it is, this <u>6th</u> day of May, 2020, hereby ORDERED that

1. Defendants' Motion for Summary Judgment, ECF No. 36, IS GRANTED; and
2. The CLERK is directed to CLOSE this case and provide a copy of this Memorandum Opinion and Order to Plaintiff and counsel for Defendants.

/S/
Paul W. Grimm
United States District Judge
